**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

RODNEY STEVENS,                 :
                                     Civil Action No. 07-3502 (NLH)
          Petitioner,           :

     v.                         :   **OPINION**

PAUL SCHULTZ, Warden,           :
et al.,
          Respondents.          :


**APPEARANCES:**

Petitioner pro se                Counsel for Respondents
Rodney Stevens                   Irene E. Dowdy
F.C.I. Fairton                   Assistant U.S. Attorney
P.O. Box 420                     401 Market Street
Fairton, New Jersey 08320        P.O. Box 2098
                                 Camden, New Jersey 08101


**HILLMAN**, District Judge

     Petitioner Rodney Stevens, a prisoner currently confined at the Federal Correctional Institution at Fairton, New Jersey., has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  The Respondents are Warden Paul Schultz and the United States Parole Commission.

---

     [1] Section 2241 provides in relevant part:

     (a) Writs of habeas corpus may be granted by the
     Supreme Court, any justice thereof, the district courts
     and any circuit judge within their respective
     jurisdictions.
     (c) The writ of habeas corpus shall not extend to a
     prisoner unless-- ... (3) He is in custody in violation
     of the Constitution or laws or treaties of the United
     States ... .

For the reasons set forth below, the Petition must be denied.

## I. BACKGROUND

In 1986, Petitioner was found guilty, in the United States District Court for the Western District of Pennsylvania, of multiple counts of violating 18 U.S.C. §§ 1202(a)(1), and 922(h)(1), firearms offenses. On June 17, 1986, he was sentenced under 18 U.S.C. § 3575 (the Dangerous Special Offender Sentencing Act) to an aggregate enhanced sentence of 46 years of imprisonment. The dates of Petitioner's offense conduct ranged from July 1985 through November 1985.

The Presentence Investigation Report ("PSR") describes violent behavior associated with Petitioner's illegal possession of firearms over a period of several months, including his intent to murder his girlfriend and her former husband, shooting a firearm in the direction of his girlfriend's mother while she was trying to protect her daughter, and bragging about having killed eight people and planning to make it ten. Also according to the PSR, when he was released from jail about a week later, he immediately obtained another firearm and began again making threats and plans to kill the targets of his earlier threats. Petitioner disputes this characterization of events. (Respondents' Sealed Exhibit 2, PSR.)

The PSR also reflects the Probation Officer's "estimates of the U.S. Parole Commission Score" of Petitioner's Salient Factor Score as "2," Offense Severity as "Category Three," and Parole Prognosis (estimated parole guideline range) of 24 to 32 months. (Respondents' Sealed Ex. 2 at 18.)

On June 18, 1986, the sentencing Judge sent the U.S. Parole Commission a "Report on Committed Offender" reflecting information he deemed relevant to parole decision making.  Among other things, the sentencing Judge advised the Commission, "This man is <u>extremely dangerous</u> to society - a killer without provocation or with slight provocation. ...  Parole Commission guidelines are meaningless in this situation.  This man <u>should never be released</u>. ...  I would consider all witnesses in this case as in extreme danger if this man returns to society.  I would consider my life in jeopardy if this man is released." (Respondents' Sealed Ex. 3 (emphasis in original).)

At Petitioner's initial parole hearing in 1993, the Parole Commission determined that Petitioner's Salient Factor Score was "4," and the Offense Severity was "Category Eight," (the highest category), for which the parole guideline range was a minimum of "150+ months" before parole.  <u>See</u> 28 C.F.R. § 2.20 (murder is a "Category Eight" offense).  The Parole Commission determined:

> After review of all relevant factors and information presented, a decision more than 48 months above the minimum guidelines range is warranted because: your offense behavior involved a conspiracy to murder two

3

> persons during which you exhibited calculated premeditated pattern of stalking your victims until [they] were in the best position for you to accomplish the murder or murders.

(Respondents' Ex. 5.)  The Parole Commission continued the matter to a 15-year reconsideration hearing in August 2008.  The Parole Commission scheduled a statutory interim hearing for August 1995.

Petitioner pursued an administrative appeal of this initial decision by the Parole Commission.  The National Appeals Board affirmed the decision, stating in pertinent part:

> In response to your claim that your offense severity is incorrectly rated as Category Eight, this claim is without merit.  Your offense behavior has been rated as Category Eight because of the reasons stated in Notice of Action dated September 17, 1993.
>
> The Commission has considered your version of the offense.  However, the Commission finds more persuasive the information which indicated that you had attempted to commit murder of two individuals, Tony and Teresa Ely.  Not only had you expressed an intent but you followed through by getting a .30-.30 rifle and a handful of shells from your brother.  You also got a pair of wire cutters to cut the telephone lines of the Ely home.  These overt acts indicate that you were preparing to murder, and would have murdered, had it not been for the intervention of law enforcement.

(Respondents' Ex. 6.)

Petitioner has received statutory interim hearings, see 18 U.S.C. § 4208(h)(2); 28 C.F.R. § 2.14(a), in 1996, 1998, 2000, 2002, 2004, and 2006.  After each such interim hearing, the Parole Commission ordered no change in the previous order. Petitioner pursued administrative appeals from the decisions in

4

1996, 2002, and 2006.  In 2002 and 2006, Petitioner again challenged the Parole Commission's prior determination of the applicable offense severity rating.  In both instances, the National Appeals Board affirmed the Parole Commission's "no change" decision, reminding Petitioner that the original determination of the offense severity rating was not subject to appeal at the interim hearings.  (Respondents' Exs. 20, 21.)

In January 2007, after completion of the administrative appeal process with respect to the 2006 parole denial, Petitioner submitted to the Parole Commission a request under the Freedom of Information Act for disclosure of documents from his parole file.  By letter dated February 27, 2007, the Parole Commission withheld from disclosure seven documents, which it described as "victim letter[s]," "victim information," and "USPC letter[s]," citing FOIA exemptions at 5 U.S.C. § 552(b)(6) and (b)(7)(C).  All of these documents were dated May through July of 2006.  Petitioner appealed the decision to withhold documents to the Chair of the Parole Commission.  By letter dated April 19, 2007, the Parole Commission provided Petitioner with certain documents (letters from the Parole Commission) with the addressees of the letters redacted under FOIA exceptions (b)(6) and (b)(7)(C).  The letter further stated that other victim letters and information were not being disclosed because, as to those documents, "Exemptions

(b)(6) and (b)(7)(C) were properly applied to withhold personal information relating to victims/witnesses listed."

Here, Petitioner challenges the 2006 decision, alleging that the Parole Commission acted arbitrarily in calculating his offense severity rating at 8, contrary to the "3" estimated rating in the PSR. He also alleges that the Parole Commission's consideration of the victim letters violated his right to fundamental fairness in the parole decision and denied him his right of confrontation. Finally, Petitioner argues that the Parole Commission decision is arbitrary and capricious because the Parole Commission has failed to exercise its discretion and has, instead, bowed to the wishes of the sentencing judge.

Petitioner requests release. In the alternative, Petitioner requests that this Court order the Parole Commission to conduct a new parole hearing and to release the withheld documents to him.

## II.  THE SENTENCING REFORM ACT

Before November 1, 1987, The Parole Commission and Reorganization Act of 1976 ("PCRA") governed the terms of federal sentences. 18 U.S.C. §§ 4201-4218 (repealed 1984, effective 1987). Pursuant to 18 U.S.C. § 4206, the Parole Commission was authorized to award federal prisoners parole under specified circumstances.

> (a) If an eligible prisoner has substantially observed the rules of the institution or institutions to which he has been confined, and if the Commission, upon consideration of the nature and circumstances of the

6

>offense and the history and characteristics of the prisoner, determines:
>
>(1) that release would not depreciate the seriousness of his offense or promote disrespect for the law; and
>
>(2) that release would not jeopardize the public welfare;
>
>subject to the provisions of subsections (b) [pertaining to written notice of decisions] and (c) [pertaining to decisions outside the guidelines] of this section, and pursuant to guidelines promulgated by the Commission pursuant to section 4203(a)(1), such prisoner shall be released.
>
>...
>
>(c) The Commission may grant or deny release on parole notwithstanding the guidelines referred to in subsection (a) of this section if it determines there is good cause for so doing: <u>Provided</u>, That the prisoner is furnished written notice stating with particularity the reasons for its determination, including a summary of the information relied upon.
>
>...

18 U.S.C. § 4206.

>The discretion of the Parole Commission is to be guided by

certain information.

>In making a determination under this chapter (relating to release on parole) the Commission shall consider, if available and relevant:
>
>>(1) reports and recommendations which the staff of the facility in which such prisoner is confined may make;
>>(2) official reports of the prisoner's prior criminal record, including a report or record of earlier probation and parole experiences;
>>(3) presentence investigation reports;
>>(4) recommendations regarding the prisoner's parole made at the time of sentencing by the sentencing judge;

7

>     (5) a statement, which may be presented
>     orally or otherwise, by any victim of the
>     offense for which the prisoner is imprisoned
>     about the financial, social, psychological,
>     and emotional harm done to, or loss suffered
>     by such victim; and
>     [(6)] reports of physical, mental, or
>     psychiatric examination of the offender.
>
> There shall also be taken into consideration such
> additional relevant information concerning the prisoner
> (including information submitted by the prisoner) as
> may be reasonably available.

18 U.S.C. § 4207.

Dissatisfied with this parole system, Congress passed the Sentencing Reform Act of 1984 ("SRA"), which repealed and replaced the PCRA, and which became effective on November 1, 1987. Pub. L. No. 98-473, §§ 212, 218, 98 Stat. 1987, 2027 (codified as amended at 18 U.S.C. §§ 3551-59, 3561-66, 3571-74, 3581-86, 28 U.S.C. §§ 991-98 (1988)). Under the SRA, parole was to be abolished for offenses committed after November 1, 1987, the Parole Commission was to be phased out after five years, and prisoners were to serve uniform sentences under sentencing guidelines. Section 235(b)(3) of the original SRA provided that:

>     The United States Parole Commission shall set a release
>     date, for an individual who will be in its jurisdiction
>     the day before the expiration of five years after the
>     effective date of this Act, <u>that is within the range
>     that applies to the prisoner under the applicable
>     parole guideline</u>. A release date set pursuant to this
>     paragraph shall be set early enough to permit
>     consideration of an appeal of the release date, in
>     accordance with Parole Commission procedures, before
>     the expiration of five years following the effective
>     date of this Act.

8

Id. (emphasis added).  On December 7, 1987, Section 235(b)(3) was amended to delete the clause requiring the Commission to set release dates <u>within</u> the guideline range.  <u>See</u> Sentencing Act of 1987, Pub.L. No. 100-182, § 2(b)(2), 1010 Stat. 1266 (1987).  The amended section 235(b)(3) requires the Parole Commission to set release dates "pursuant to section 4206 of Title 18 United States Code," which permits release dates <u>outside</u> the guideline range.[2]

Congress repeatedly has extended the life of the Parole Commission to administer those prisoners with pre-SRA sentences.  <u>See</u>, <u>e.g.</u>, Pub.L. No. 101-650, Title III, § 316, 104 Stat. 5089,

---

[2] The Court of Appeals for the Third Circuit clearly has held that the 1987 amendment to § 235(b)(3), which reinstated the authority of the Parole Commission to set parole release dates outside the guideline range, violates the Ex Post Facto Clause when applied to an offender who committed his crimes between October 12, 1984, and November 1, 1987, during which time the original § 235(b)(3) required the Parole Commission to set parole release dates within the guideline range.  <u>See</u> <u>Lyons v. Mendez</u>, 303 F.3d 285 (3d Cir. 2002).

Faced with an issue similar to that presented here, however, the Court of Appeals for the Third Circuit held that it was unnecessary to consider whether the amended version of Section 235(b)(3) was applied unconstitutionally to a Category Eight offender whose offenses had been committed in 1976.  <u>Madonna v. U.S. Parole Commission</u>, 900 F.2d 24 (1990).  Assuming <u>arguendo</u> that no upward departure was permitted, the Court found that no upward departure had occurred, or could occur, because there is no upper limit to the guideline range applicable to Category Eight offenders.  <u>Id.</u> at 25-26.

Similarly, here, the Parole Commission has not set a parole reconsideration date outside of the guideline range, because the guideline range, at all relevant times, for Petitioner, a Category Eight offender, with a Salient Factor Score of 4, has been 150-plus months.

9

5115 (1990)  (extension to ten years); Pub.L. No. 104-232, § 2(a), 110 Stat. 3055 (1996) (extension to fifteen years); Pub.L. No. 107-273, § 11017, 116 Stat. 1758 (2002) (extension to eighteen years); Pub.L. No. 109-76, § 2, 119 Stat. 2035 (2005) (extension to twenty-one years).  The life of the Commission has been extended most recently to October 31, 2011.  See Pub.L. No. 110-312, § 2, 122 Stat. 3013 (2008) (extension to twenty-four years).

Pursuant to the guidelines promulgated by the Commission, at all times relevant to this action, a federal prisoner with an Offense Severity Rating of Eight has had a guideline range of at least 100-plus months to be served before release, regardless of the prisoner's Salient Factor Score.  28 C.F.R. § 2.20 Table "Guidelines for Decision-Making."  See 47 Fed.Reg. 56334-36 (Dec. 16, 1982); 50 Fed.Reg. 40365-67 (Oct. 3, 1985); 52 Fed.Reg. 46596-97 (Dec. 9, 1987).  In the regulation, the Parole Commission notes "For Category Eight, no upper limits are specified due to the extreme variability of the cases within this category."  28 C.F.R. § 2.20 Table "Guidelines for Decision-Making" Note 1.

### III.  ANALYSIS

A federal court's role in reviewing decisions by the Parole Commission is limited.

> The appropriate standard of review of the Commission's findings of fact "is not whether the [Commission's

10

>  decision] is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the [Commission's] conclusions embodied in its statement of reasons." Zannino v. Arnold, 531 F.2d 687, 691 (3d Cir. 1976); see also 28 C.F.R. § 2.18 ("The granting of parole to an eligible prisoner rests in the discretion of the United States Parole Commission."). This Court should review, however, whether the Commission "has followed criteria appropriate, rational and consistent" with its enabling statutes so that its "decision is not arbitrary and capricious, nor based on impermissible considerations." Zannino, 531 F.2d at 690. To this end, "the Commission may not base its judgment as to parole on an inaccurate factual predicate." Campbell v. United States Parole Comm'n, 704 F.2d 106, 109 (3d Cir. 1983) (citations omitted).

Furnari v. Warden, Allenwood Federal Correctional Institution, 218 F.3d 250, 254 (3d Cir. 2000).

In making its decisions, the Parole Commission may consider hearsay, counts of an indictment that have been dismissed, and information in a separate dismissed indictment. See Campbell v. United States Parole Commission, 704 F.2d 106, 109-10 (3d Cir. 1983) (collecting cases).

"[T]he appropriate judicial remedy when an agency exceeds its discretion is a remand to the agency for further proceedings consistent with the court's opinion." Bridge v. United States Parole Commission, 981 F.2d 97, 105 (3d Cir. 1992) (citing Federal Power Comm. v. Idaho Power Co., 344 U.S. 17, 20 (1952)).

A.   The Offense Severity Rating

Petitioner challenges the Parole Commission's determination that his Offense Severity Rating should be "Category Eight."

11

Pursuant to 18 U.S.C. § 4207, in making parole decisions, that Parole Commission shall consider, if available and relevant, various types of information, including the pre-sentence report. The pre-sentence report, however, is not binding on the Parole Commission. See, e.g., Laivinieks v. True, 1994 WL 71492 (N.D. Ill. March 4, 1994) (citing United States v. Coyer, 732, F.2d 196, 200-01 (D.D.C. 1984)).

Here, there is a rational basis in the record for the Parole Commission's determination, as set forth in its statement of reasons, that Petitioner's offense conduct warranted a Category Eighth rating. Specifically, the record establishes that Petitioner repeatedly threatened multiple victims with harm, that he fired a shotgun near Teresa Ely's mother, that he beat and threatened Teresa Ely, that he armed himself with a rifle and ammunition, and that he took numerous other steps toward the murder of Tony and Teresa Ely, including soliciting the assistance of others and obtaining wirecutters to prevent the intended victims from calling for help.

Petitioner's challenge to his offense severity rating is meritless and shall be denied.

B.   Consideration of Undisclosed Victim Letters

In support of his contention that he was denied fundamental fairness and his right of confrontation by the Parole Commission's consideration of victim letters that were not

12

disclosed to him, Petitioner cites Ash v. Reilly, 431 F.3d 826 (D.C. Cir. 2005).

Ash is not supportive of Petitioner's argument. In Ash, the court was considering whether the prisoner had been deprived of his due process rights in a parole revocation proceeding, a loss of liberty quite different from that implicated by a hearing to determine whether to grant parole to one who is already lawfully imprisoned. See, e.g., Morrissey v. Brewer, 408 U.S. 471, 481-83 (1972), and Gagnon v. Scarpelli, 411 U.S. 778 (1973).

> There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence. The natural desire of an individual to be released is indistinguishable from the initial resistance to being confined. But the conviction, with all its procedural safeguards, has extinguished that liberty right: "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty." Meachum v. Fano, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976).

Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979).

In Greenholtz, accepting that the state parole statute at issue[3] created an "expectancy of release ... entitled to some

---

[3] The Nebraska statute as issue provided:

> Whenever the Board of Parole considers the release of a committed offender who is eligible for release on parole, it shall order his release unless it is of the opinion that his release should be deferred because:
>     (a) There is a substantial risk that he will not conform to the conditions of parole;
>     (b) His release would depreciate the seriousness of his

13

measure of constitutional protection," 442 U.S. at 12, the Court rejected the suggestion that parole hearings should be full-scale adversary hearings.  The Court specifically rejected the lower court's requirement that the parole board provide advance written notice of "a list of factors that might be considered."  442 U.S. at 14 n.6.

In addition, in a ruling not appealed to the Supreme Court in that same case, the Court of Appeals for the Eighth Circuit held that, in the absence of exceptional circumstances, a prisoner at a parole hearing has no constitutional right to call witnesses in his behalf or to confront and cross-examine adverse witnesses.  576 F.2d 1274, 1284 (8th Cir. 1978), rev'd in part on other grounds, 442 U.S. 1 (1979).  See also Tarlton v. Clark, 441 F.2d 384 (5th Cir.) (prisoner has no right to cross-examine witnesses in parole proceeding), cert. denied, 403 U.S. 934 (1971); Ferris v. Mainy, 1992 WL 199150 (D. Kan. July 15, 1992) (prisoner has no due process right to know the source of

---

          crime or promote disrespect for law;
          (c) His release would have a substantially adverse
          effect on institutional discipline; or
          (d) His continued correctional treatment, medical care,
          or vocational or other training in the facility will
          substantially enhance his capacity to lead a law-
          abiding life when released at a later date.

Neb. Rev. Stat. § 83-1,114(1) (1976).  The statute also provided a list of 14 explicit factors and one catchall factor that the Board was obligated to consider in reaching a decision. Neb.Rev.Stat. §§ 83-1,114(2)(a)-(n) (1976).

objections to his release on parole or to cross-examine persons objecting to release); Barr v. United States, 415 F.Supp. 990, 993 (D.C. Okla. 1976) (federal prisoner has no due process right to examine Parole Board's file or to cross-examine witnesses who have given statements to Parole Board).

In addition, the Sixth Amendment right of confrontation applies only to criminal prosecutions. See United States v. Ward, 448 U.S. 242, 248 (1980). There is no Sixth Amendment right of confrontation in the context of parole proceedings. See, e.g., Hill v. Patrick, 2007 WL 709311 *7-8 (W.D. Pa. March 5, 2007).

Thus, there is no merit to Petitioner's contention that he was entitled to review the victim letters and confront those witnesses. He was given advance notice of the hearing and he was given an opportunity to be heard. He was also given a statement of the reasons for the decision to deny parole. Due process requires no more.

C.  Consideration of Sentencing Judge's Statement

Finally, Petitioner contends that the Parole Commission improperly ceded its authority to the sentencing judge, by bowing to his recommendation to deny parole.

Again, Section 4207(4) specifically directs the Parole Commission to consider, if available and relevant, recommendations regarding parole made at the time of sentencing

15

by the sentencing judge.  Thus, it is entirely appropriate for the Parole Commission to consider the recommendations of this sentencing judge as reflected in his Report on Committed Offender.  Moreover, the record reflects that the Commission has consistently considered all the relevant information in making its decisions.  Petitioner is not entitled to relief on this claim.

D.   Pending Motion

After the Answer in this matter was filed, Petitioner filed a letter Motion [18] to amend the Petition to challenge the result of his parole reconsideration hearing in April 2008.  On September 19, 2008, this Court received an addendum [21], a Notice of Action on Appeal, which reflected that Petitioner had exhausted his administrative remedies with respect to the 2008 decision to deny parole and to continue Petitioner in custody to the expiration of his sentence.  Petitioner's only challenge to this most recent decision appears to be the argument that the offense severity Category Eight is not supported by the record.

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend should be freely given "when justice so requires." The decision issued in 2008 was as the result of the scheduled 15-year reconsideration hearing, not a statutory interim hearing. Here, however, as this Court has already determined that the Parole Commission's determination of the offense severity rating

16

is adequately supported in the record, and as Petitioner does not assert any different basis for his challenge to the offense severity rating, this Court will deny Petitioner's motion to amend the Petition to re-assert this claim with respect to the 2008 decision, without prejudice, however, to Petitioner's filing a <u>new</u> petition for writ of habeas corpus to challenge the 2008 decision, should he wish to raise other claims.

### III.  CONCLUSION

For the reasons set forth above, the Petition must be denied.  An appropriate order follows.


At Camden, New Jersey         s/Noel L. Hillman
                              Noel L. Hillman
                              United States District Judge

Dated: October 24, 2008